UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPENSIFY, INC., <br>     Plaintiff, <br> v. <br> EDDIE WHITE, <br>     Defendant. | Case No. 19-cv-01892-PJH <br><br> **ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** <br><br> Re: Dkt. No. 22 |

Defendants Eddie White's ("defendant White") and Matt Koleslar's ("defendant Koleslar") (collectively, "defendants") motion to dismiss plaintiff Expensify, Inc's ("plaintiff") complaint for declaratory relief came on for hearing before this court on September 18, 2019. Plaintiff appeared through its counsel, Steven Carlson and Kevin Pasquinelli. Defendants appeared through their counsel, Kevin Tucker. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion to dismiss with prejudice for the following reasons.

**BACKGROUND**

On April 8, 2019, plaintiff filed this action for declaratory relief under Title 28 U.S.C. § 2201 against defendants. Dkt. 1 ("Compl."). In it, plaintiff requests that the court make three legal determinations concerning the compliance of its website and mobile applications with certain requirements under the Americans with Disabilities Act ("ADA"), California Unruh Act (the "Unruh Act"), and Pennsylvania's Human Relations Act ("PHRA"). Those requests include the following:

- Plaintiff's website and mobile applications are not places of public

accommodation within the meaning of the ADA and therefore do not violate the ADA, Compl. ¶ 30;

- Plaintiff's website and mobile applications are not places of public accommodation within the meaning of the Unruh Act, plaintiff has not intentionally discriminated in its website, and therefore, plaintiff does not violate the Unruh Act, id. ¶ 36; and

- Defendants have not exhausted their administrative remedies against plaintiff before Pennsylvania's administrative Human Rights Commission (the "PHRC") and therefore any claim under the PHRA in this court is not ripe, id. ¶ 40.

Further detail of the complaint's relevant allegations, as well as post-filing events, is further detailed below.

### A. The Complaint's Allegations

Plaintiff is a Delaware corporation "with principal places of business in San Francisco, California and Portland, Oregon." Compl. ¶ 7. Plaintiff alleged personal jurisdiction as to defendant White given his California residency, id. ¶ 4, and defendant Koleslar on grounds that he purposefully conducted activities in California, id. ¶ 5.

In its complaint, plaintiff alleges that defendants asserted that plaintiff violates the ADA, the Unruh Act, and the PHRA by failing to accommodate the needs of the visually impaired via its website and mobile applications. Compl. ¶ 2. Citing case law, plaintiff explains how such purported assertions by defendants would not constitute legally cognizable claims in California. Id. ¶¶ 2, 18-25. Plaintiff's basic positions are threefold:

(1) Plaintiff's website services do not qualify as a place of public accommodation (bringing it within the purview of the ADA's requirements) because controlling Ninth Circuit authority has ruled that a business operated website qualifies as a place of public accommodation only if the allegedly discriminatory conduct has a nexus to the goods and services offered at a physical location, id. ¶¶ 11, 18;

(2) In their prelitigation communications, defendants failed to assert any facts

showing the intentional discrimination necessary to state a claim under the Unruh Act, id. ¶ 23; and

(3) There has been no exhaustion of the administrative remedies necessary to initiate a claim under the PHRA, id. ¶ 24.

With respect to its compliance with the ADA, plaintiff expressly acknowledges that "[c]ircuit courts are split on whether websites, and associated mobile applications which access those websites, constitute a place of public accommodation as requirement by the ADA." Compl. ¶ 18. Later revealed in the parties' prelitigation communications, various courts in Pennsylvania, New Hampshire, and Massachusetts take a position on this issue contrary to that adopted by the Ninth Circuit.

At the heart of the initial jurisdictional inquiry in this matter are those same prelitigation communications. Prior to plaintiff's initiation of this action, the parties exchanged four relevant sets of written communications concerning the subject matter of plaintiff's requests. Those communications include the following:

(1) a **February 27, 2019 letter** from defense counsel to plaintiff, Compl., Ex. 2;

(2) a **March 18, 2019 letter** from plaintiff's counsel to defendants, Compl., Ex. 3; Dkt. 22-2, Ex. 3;

(3) a **March 23, 2019 email** from defense counsel to plaintiff, Compl. ¶ 17; Dkt. 22-2, Ex. 4; and

(4) an **early April 2019 email** string between counsel, Dkt. 22-2, Ex. 5.

A detailed description of key statements made in each of these communications appears in the analysis sections below.

**B. Relevant Post-Complaint Events**

On May 15, 2019, about a month after plaintiff filed its complaint, defendants sent plaintiff a letter purportedly confirming that they waived their respective rights to sue plaintiff regarding whether its website/mobile applications violate the ADA, Unruh Act, or PHRA. Dkt. 22-1 ¶ 7; Dkt. 22-2, Ex. 6. On June 19, 2019, defendants both executed a "Release and Waiver of Claims" (the "waiver") containing a Covenant Not to Sue (the

3

"covenant") detailing substantially the same guarantee as that detailed in their May 15, 2019 letter. Dkt. 22-1 ¶ 3; Dkt. 22-2, Ex. 2. The exact language of the waivers is further discussed in the analysis section below.

On July 25, 2019, White and Koleslar filed this motion to dismiss. Dkt. 22. Prior to its briefing, on August 21, 2019, the parties entered a stipulation of voluntary dismissal of defendant Koleslar without prejudice. Dkt. 28. Remaining defendant White premises his motion to dismiss on a lack of federal subject matter jurisdiction for want of a justiciable controversy.[1]

**DISCUSSION**

**A. Legal Standard**

A federal court may dismiss an action under Federal Rule of Civil Procedure 12(b)(1) for lack of federal subject matter jurisdiction. Fed. R. Pro. 12(b)(1). "Article III of the United States Constitution limits the jurisdiction of the federal courts to 'cases' and 'controversies,'" Bayer v. Neiman Marcus Group, Inc., 861 F. 3d 853, 861 (9th Cir. 2017) (citation omitted), and the Declaratory Judgment Act applies only in "a case of actual controversy," 28 U.S.C. § 2201. To determine the existence of a cognizable controversy within the meaning of the Declaratory Judgment Act, courts must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 272 (1941). In the Ninth Circuit, "if the defendant's actions cause the plaintiff to have a 'real and reasonable apprehension that he will be subject to liability,' the plaintiff has presented a justiciable case or controversy." Spokane Indian Tribe v. United States, 972 F.2d 1090, 1092 (9th Cir. 1992) (citation omitted). Because "[a]

---

[1] Defendants' motion originally included a Rule 12(b)(2) challenge for want of personal jurisdiction over then-defendant Koleslar. That challenge was limited to defendant Koleslar. Given his dismissal from this action, the court need not rule on defendant Koleslar's unique challenge to this court's personal jurisdiction over him. As a result, the only remaining challenge by defendant White is based on Rule 12(b)(1).

4

federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears," the burden to prove its existence "rests on the party asserting federal subject matter jurisdiction." Pac. Bell Internet Servs. v. Recording Indus. Ass'n of Am., Inc., 2003 WL 22862662, at *3 (N.D. Cal. Nov. 26, 2003).

A federal court loses its authority to rule on the legal questions presented in a declaratory action if events following its commencement render it moot. Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) ("An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000). To determine whether an action has been rendered moot, courts in the Ninth Circuit examine whether changes in the circumstances existing when the action was filed have forestalled any meaningful relief. West v. Secretary of Dept. of Transp., 206 F.3d 920, 925 n.4 (9th Cir. 2000).

**B. Analysis**

The court finds that a cognizable controversy existed at the time plaintiff initiated its complaint. However, the court further finds that defendants' waivers mooted that action and that neither the voluntary cessation nor capable of repetition yet evading review limitation on mootness applies here. The court also finds that plaintiff has not stated a claim for nominal damages that remains actionable and that any attempt by plaintiff to amend its complaint to salvage the justiciability of this action would be futile.

**1. A Cognizable Controversy Existed When Plaintiff Initiated This Action**

Plaintiff carried its burden to show that a cognizable controversy existed when it initiated this action. The circumstances surrounding the prelitigation events here support finding a real and reasonable apprehension that defendants would sue it. Those circumstances include defense counsel's prelitigation communications, reputation, and specialized practice.

In their initial February 27, 2019 letter to plaintiffs, defendants include the following

statements suggesting that they would sue plaintiff for its failure to comply with the ADA, Unruh Act, and PHRA:

- "***Our clients contend you have violated several*** statutes that prohibit disability discrimination, including *inter alia*, California's Unruh Civil Rights Act . . . the Pennsylvania Human Relations Act . . . and the Americans with Disabilities Act," Compl., Ex. 2; Dkt. 22-2, Ex. 1 (emphasis added);
- "Failure to remediate these deficiencies ***will subject you to suit*** in Pennsylvania federal court, ***and potentially, to California's statutory damages on a class basis,***" id. (emphasis added);
- "Our clients also request, ***on behalf of all similarly situated individuals in the United States***, that you adopt a policy that protects against such disability discrimination," id. (emphasis added).

These statements, even though subtle, signal to plaintiff key aspects of what potential litigation against it would look like. Additionally, the fact that defendants' letter includes a 14-day window to respond, id., and carbon copies a Carlson Lynch lawyer "licensed to practice in CA," id., serves as additional indicia of the typical threats preceding litigation.

Additionally, numerous statements in defendants' March 23, 2019 email[2] to plaintiff further support a real and reasonable apprehension by plaintiff that defendants intended to sue it. Those statements include the following:

- "In the last several years, our firm has overcome the 'public accommodation' argument you raise," Compl., ¶ 17; Dkt. 22-2, Ex. 4;
- "Attached is a 2018 decision from W.D.Pa., ***where we will likely file the matter if necessary*** . . .," Dkt. 22-2, Ex. 4 (emphasis added);
- "Alternatively, ***we also file 'website-only' cases*** in the D.Mass and D.N.H.," id.

---

[2] Defense counsel labeled its email a Federal Rule of Evidence 408 communication but nonetheless attached it (in its entirety) to defendants' opening brief. As a result, defendants have waived any argument that such communication is privileged.

1  (emphasis added);

- "In light of the above, we have been retained to contact Expensify about its inaccessible mobile applications and to resolve our clients' discrimination claims in a confidential settlement agreement, *or litigation*," id. (emphasis added);
- "In addition to the costs our clients have incurred to date, they seek compensation for compliance monitoring, to which our firm contends they would be entitled *as a prevailing party upon filing suit*," id. (emphasis added);
- "By resolving this matter *before litigation*, it is our designed goal to eliminate the litigation-related fee award entirely and reduce the monitoring costs significantly," id.

Again, while none of these communications overtly state that defendants would file suit against plaintiff, they either imply or assume the possibility of such suit. Moreover, the fact that defense counsel attached numerous judicial decisions as PDFs to this email, id., noted by plaintiff in its opposition brief as prior decisions successfully litigated by defense counsel, confers added credibility to defendants' suggestions that they would sue plaintiff.

Less significant, although still relevant, is defense counsel's legal practice. Plaintiff alleges that defense counsel's firm "is a leading filer of ADA claims," Compl. ¶ 13, and defense counsel's own prelitigation communications (noted above) support that characterization. The fact that defendants contacted plaintiff through counsel with such a reputation further supports finding that plaintiff acted out of a real and reasonable apprehension of facing suit by defendants.

Defendants, however, do identify numerous statements in their prelitigation communications reflecting an intent to cooperate with plaintiff. Such statements include the following:

- "Please let us know within fourteen (14) days of receipt of this letter if you agree to participate in the *interactive process* outlined above," Compl., ¶ Ex. 2; Dkt. 22-2, Ex. 1 (emphasis added);

7

- "In light of the above, we have been retained to contact Expensify about its inaccessible mobile applications and ***to resolve*** our clients' discrimination claims in a confidential settlement agreement, or litigation," Dkt. 22-2, Ex. 4 (emphasis added);
- "***By resolving*** this matter before litigation, it is our designed goal to eliminate the litigation-related fee award entirely and reduce the monitoring costs significantly," id. (emphasis added);
- "Perhaps we can schedule a time to connect by phone?," id.;
- "Please let me know by April 11, 2019 whether you believe further pre-litigation discussions are appropriate. Otherwise, our office will conclude ***these resolution efforts*** to have been unsuccessful and go from there," Dkt. 22-2, Ex. 5 (emphasis added); and
- Upon learning that Expensify's counsel was out of the country, defense counsel wrote: "That is awesome. ***I look forward to catching up with [plaintiff's counsel] upon his return***. Steve, if you're reading this, I hope you have a great time during your last days in Morocco," id. (emphasis added).

While these statements reflect an apparent intent to resolve defendants' complaints about the accessibility of plaintiff's website without litigation, the court finds that any such intent is overshadowed by the suggestions of litigation specified above. Relatedly, while defendants might be correct that certain cases they cite as finding a cognizable controversy involve facts not present here, the formation of a "real and reasonable" apprehension is a fact-intensive inquiry and the specific circumstances surrounding the parties' prelitigation communications here may nonetheless form the basis for plaintiff's "real and reasonable apprehension" of suit.

Defendants' remaining argument—that finding a cognizable apprehension of litigation by plaintiff would "chill" pre-complaint communications aimed at informal resolution of a dispute—has merit. Regardless, by defendants' own recognition, that argument is grounded in the "policy" of the Ninth Circuit. While informal resolution may

8

be a desired outcome of the law, it does not dictate application of the controlling doctrinal test for determining the existence of a cognizable controversy.

### 2. Events Subsequent to the Complaint's Filing Mooted this Action

There is no contest that defendants' waivers facially mooted this action. As discussed immediately below, such waivers are materially identical to those that the United States Supreme Court in Already, LLC v. Nike, Inc., 568 U.S. 85 (2013) found in the first instance to "call[] into question the existence of any continuing case or controversy." Id. at 92. Instead, the key questions here are whether either (1) the voluntary cessation or (2) the capable of repetition yet repeating review doctrines limit such mootness finding. They do not.

#### i. Defendants' Waivers Satisfy the Voluntary Cessation Test

A defendant's voluntary cessation of the conduct challenged in an existing action moots a case only if such cessation is "*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 221 (2000) (emphasis in the original). The Court in Already, LLC v. Nike, Inc. recognized that a defendant's voluntary, unconditional, and irrevocable covenant not to sue in connection with certain subject matter challenged by plaintiff in a declaratory judgment action is sufficiently broad to ensure that defendant's challenged conduct could not reasonably be expected to recur. 568 U.S. 85, 92-95. The party challenging the ongoing justiciability of an existing action bears the "heavy burden" of proving that the challenged conduct cannot reasonably be expected to recur. Adarand Constructors, Inc., 528 U.S. at 222.

Here, defendants have met their burden of showing that their challenged conduct cannot reasonably be expected to recur. Defendants are correct that the Court in Already, LLC v. Nike, Inc. considered a materially similar covenant not to sue as provided in this case. 568 U.S. 85, 93. Compared side-by-side, each covenant provides as follows:

9

| Covenant Not to Sue in Already LLC | Covenant Not to Sue in this Action |
|---|---|
| "***[Nike] unconditionally and irrevocably covenants to refrain from making any claim(s)*** or demand(s) ... ***against Already*** or any of its ... related business entities ... [including] distributors ... and employees of such entities and all customers ... ***on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law*** ... relating to the NIKE Mark based on the appearance of any of Already's current and/or previous footwear product designs, and any colorable imitations thereof, regardless of whether that footwear is produced ... or otherwise used in commerce ***before or after the Effective Date of this Covenant***." Already, LLC v. Nike, Inc., 568 U.S. 85, 93 (2013) (emphasis added). | "***White unconditionally and irrevocably covenants to refrain from making any claim(s)*** or demand(s) ***against Expensify***, or any of its related business entities, including distributors and employees of such entities ***on account of any possible cause of action based on or involving the accessibility of Expensify's past, present, or future websites and mobile applications***, including but not limited to all claims arising from or relating to Title III of the ADA, California, Unruh Civil Rights Act, the Pennsylvania Human Relations Act, and any other federal, state, or local law, statute or ordinance, rule or principle of common law or doctrine in law or equity, known or unknown, suspected or unsuspected, foreseen or unforeseen, real or imaginary, actual or potential, ***before or after the Effective Date of this Covenant***." Dkt. 22-2, Ex. 2 (emphasis added). |

As defendants also point out, the Court held that such covenant overcame the voluntary cessation limitation on the mootness doctrine. Id. at 728. The Court reasoned that plaintiff's "only legally cognizable injury—the fact that Nike took steps to enforce its trademark—is now gone and, ***given the breadth of the covenant, cannot reasonably***

*be expected to recur*.  There being no other basis on which to find a live controversy, the case is clearly moot."  Id. at 732 (emphasis added).

Here, there is no cognizable distinction between the covenants provided by defendants to plaintiff and those considered in Already, LLC.  The conduct challenged by the plaintiff in Already, LLC was Nike's attempt to "press[] an invalid trademark to halt [Already's] legitimate business activity."  Id. at 91-92.  The conduct challenged by plaintiff is the threat of a lawsuit for purported ADA-related violations in connection with its website.  Because the breadth of the covenants provided in the waivers "suffices to meet the burden imposed by the voluntary cessation test," id. at 728, the justiciability of plaintiff's mooted action against defendants is not saved by this limitation.[3]

### ii. Plaintiff Does Not Present a Cognizable Theory that Defendants' Conduct Is Capable of Repetition Yet Evading Review

Courts also recognize a limitation on the mootness doctrine when conduct underlying a declaratory judgment action is "capable of repetition while evading review." Alvarez v. Smith, 558 U.S. 87, 93 (2009).  This limitation applies only in "exceptional situations, and generally only where the plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."  Alvarez, 558 U.S. 87, 93.  The Ninth Circuit has ruled that "the 'capable of repetition, yet evading review' exception to mootness applies only when (1) the challenged action is too short in duration to be fully litigated before cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."  Bernhardt v. Cty. of Los Angeles, 279 F.3d 862, 871–72 (9th Cir. 2002).

Here, plaintiff does not argue that the conduct of defendants White or defendant Koleslar is capable of repetition yet evading review.  Instead, plaintiff argues that the

---

[3] Plaintiff's remaining argument on the applicability of this limitation—that defendants' waivers do not prevent non-party ***defense counsel*** from initiating additional lawsuits against plaintiff on behalf of ***other future potential litigants***—is substantially similar to its theory that the challenged conduct is capable of repetition yet evading review.  As a result, the court addresses the merits of that argument immediately below.

11

likelihood that defense counsel will represent other third-party plaintiffs in future website disability access related litigation triggers preserves the justiciability of its action.

Plaintiff failed to identify any authority expressly considering its theory that potential future representation of third-parties by counsel may trigger the capable of repetition yet evading review limitation. The closest authorities identified, proffered by defendants, simply presume that the challenged conduct capable of repetition would be repeated by the defendant to the existing action, see *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) ***by the defendant*** that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought through the court, ***but from the defendant***. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—***is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff***.") (emphasis added), or must implicate the interests of the parties, see Seven Words LLC v. Network Sols., 260 F.3d 1089, 1098–99 (9th Cir. 2001) ("A case or controversy exists justifying declaratory relief only when 'the challenged ... activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect ***on the interests of the . . . parties***.'") (emphasis added). Absent authority acknowledging that this limitation extends to potentially unreviewable conduct by unascertainable persons not a party to the litigation, the court refuses to adopt plaintiff's theory of the capable of repetition yet evading review doctrine.

In any event, plaintiff's theory, if accepted, would run the risk of running afoul of other jurisdictional requirements. Absent joinder of the future potential litigants that plaintiff purports will evade review, plaintiff cannot satisfy the Article III standing requirement that the challenged injury be both "imminent, not conjectural or hypothetical"

12

as well as "fairly traceable to the challenged action of the defendant."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–81 (2000).  Additionally, because defendant White is the only defendant remaining party to this action and plaintiff's claims as to him were mooted by his waiver, ruling on the action pursuant to plaintiff's theory would also qualify as an advisory opinion on some speculative future third-party conduct not yet giving rise to the real and reasonable apprehension necessary to find a cognizable case or controversy.  These additional potential jurisdictional defects provide an independent basis to reject plaintiff's theory.

Lastly, as just described with respect to the conduct of potential future third-party litigants, defense counsel is not a party to this litigation.  Whatever it may do with third-party litigants in the future is of no moment to what this court does with the litigants in this action now.  As a result, the court refuses to extend the capable of repetition yet evading review limitation here on the ground that defense counsel may instigate future litigation elsewhere.

### 3. Prudential Factors Separately Cut Against Deciding Plaintiff's Claims

Distinct from the case and controversy requirement, a district court must also be satisfied that deciding an action for declaratory judgment is prudentially appropriate. Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1222-23 (9th Cir. 1998) ("The Declaratory Judgment Act embraces both constitutional and prudential concerns. . . . If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate.").  Among others, such factors include whether exercising jurisdiction would result in needlessly determining state law issues, encouraging forum shopping, clarifying the legal relations at issue, or promoting procedural fencing.  Id. at 1225.

Here, even if plaintiff's action were constitutionally justiciable, the court is still not satisfied that the various factors outlined in Dizol support exercising its authority to decide plaintiff's claims.  As a result, on this independent ground, too, dismissal of plaintiff's claims is appropriate.

13

**4. Plaintiff's Nominal Damages Claim Does Not Preserve This Action**

While "a live claim for nominal damages will prevent dismissal for mootness," Bayer v. Neiman Marcus Grp., Inc., 861 F.3d 853, 869 (9th Cir. 2017), such a prayer arising out of a now-mooted claim requires "close inspection" as to its validity, Arizonans for Official English, 520 U.S. 43, 71. In Bayer, the Ninth Circuit considered a claim for a declaratory judgment premised upon an alleged requirement by an employer that its employees consent to an arbitration agreement as a condition of employment. Id. at 860. Plaintiff claimed that such requirement violated Title 28 U.S.C. § 12203(b) because it effectively required him to choose between his job and the exercise of his civil rights under the ADA. Id. at 867. Because plaintiff was no longer employed by the employer, the court concluded that such declaratory judgment claim was moot. Id. at 868.

The court then considered whether plaintiff's claim for nominal damages—which arose out of the same set of facts supporting plaintiff's mooted claim for declaratory judgment—remained actionable as an equitable remedy. Id. at 868-69. The court determined that it was. Id. at 875. To reach that determination, the court reasoned that "a violation of a statute intended to safeguard civil rights" gives rise to a certain "dignitary interest" that makes nominal damages "particularly well suited to securing complete justice" in that case. Id. at 874. The court in Bayer explained that "[i]n the context of a claim brought under a federal statute intended to combat discrimination, the phrase 'complete justice' has a clear meaning: the district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'" Id. at 873 (citations omitted) (footnote omitted).

Here, plaintiff has failed to identify any special interest justifying an award of nominal damages. Instead, plaintiff merely argues that defendants' suggestions that its website is in violation of applicable law qualifies as an affront to its "dignitary interest." A play on words, such an affront (even if true) does not qualify as a violation of plaintiff's civil rights. As a result, an award for nominal damages here would not advance the sort

of "complete justice" relied upon by the Bayer court to issue such relief. Because plaintiff also failed to identify any authority recognizing the propriety of a nominal damages award in a situation such as this outside the civil rights context, plaintiff's claim for nominal damages does not preserve the justiciability of its action.

### 5. Plaintiff's Requests to Amend Its Complaint Are Futile

Attempting to salvage the justiciability of its action, plaintiff requests leave to amend its complaint on three distinct grounds. Because none of these grounds would revive plaintiff's action, its requests to amend are denied as futile.

#### i. Allegations of a Reasonable Apprehension of a Class Action Suit

In its opposition briefing, plaintiff requests leave to amend its complaint to specifically allege reasonable apprehension of a class action suit. At oral argument, plaintiff failed to identify any ascertainable class or basis beyond a single reference to a class action in the parties' prelitigation communications to justify such an amendment. Given such failures, the court finds that plaintiff's request to amend its complaint on this ground is futile and therefore DENIED.

#### ii. Nominal Damages on the Theory of Defense Counsel's Purported Accusations of Unlawful Conduct

In its briefing, plaintiff also requests leave to amend its prayer for relief to specify a claim for nominal damages premised upon defense counsel's wrongfully accusing plaintiff of violating the statutory rights of blind individuals. Because plaintiff has failed to identify any legal basis that would support an award for nominal damages in a case such as this (where the alleged underlying injury is not a violation of its civil rights), plaintiff's request to amend its complaint on this ground is futile and therefore DENIED.

#### iii. Negligent Misrepresentation concerning Defendant White's Use of Plaintiff's Website

At oral argument, plaintiff raised the possibility of amending its complaint to allege a negligent misrepresentation or fraud claim against defendant White on the basis that he never actually used plaintiff's website. When asked by the court at oral argument,

15

plaintiff failed to identify any misrepresentation in a verified pleading by defendant White. Instead, plaintiff pointed only to statements by defense counsel in their prelitigation communications and reply brief. The court refuses to find that defendant White should be held liable for any misrepresentations by defense counsel (much less attorney argument) about his actual use of plaintiff's website.[4] As a result, plaintiff's request to amend its complaint on this ground is futile and therefore DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: October 18, 2019

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge

---

[4] The court cautions that a misrepresentation in a verified pleading could compel a different result.

16